**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL BARROUK,** | : | **Civil No. 3:14-CV-1102** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **PNC BANK, N.A.,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM ORDER**

## I.   INTRODUCTION AND BACKGROUND

In this action, Michael Barrouk ("Plaintiff") has sued his former employer,
PNC Bank, N.A. ("Defendant" or "the Bank"), alleging that the Bank discriminated
against him on the basis of race and gender when it terminated his employment as a
Commercial Market Relationship Manager after he admittedly falsified an internal
Call Report in 2012, which constituted an act of dishonesty and a violation of the
Bank's Code of Business Conduct and Ethics ("Code of Ethics").  Now pending
before the Court is the Bank's motion for a protective order to prevent the Plaintiff
from taking the deposition of Mike Brundage and the Rule 30(b)(6) discovery that the
Plaintiff has noticed.

The discovery period in this action was originally scheduled to close on
February 2, 2015. (Doc. 16.) On December 30, 2014, the parties' jointly represented

that they had "almost completed discovery by the end of 2014, but required some additional time to complete the Plaintiff's deposition and other depositions that the Plaintiff had noticed, thus necessitating a "brief extension of the remaining scheduling order deadlines." (Doc. 21.)  The parties thus requested that the deadline for completing discovery be enlarged until March 19, 2015, and that dispositive motions be due by April 16, 2015.  (Doc. 21.)  The Court entered an order adopting the proposed amendments to the case-management schedule.  (Doc. 23.)

The defendants filed a timely motion for summary judgment on April 16, 2015, together with a statement of facts and a brief in support of the motion.  (Docs. 32, 33.) Rather than file a brief in response to the motion, on April 30, 2015, the Plaintiff filed a motion seeking an extension of time to do so until resolution of the Plaintiff's motion for allowance to take another deposition pursuant to Rule 56(d) and 30(b)(6). (Doc. 34.)  The Bank opposed this motion.  (Doc. 38.)

Upon consideration, the Court granted the motion in part by authorizing the Plaintiff to take the deposition of John Dorneman on or before July 30, 2015, and allowing the parties to take any additional reciprocal discovery related to the subject matter of Mr. Dorneman's deposition by August 31, 2015.  (Doc. 40.)  Thereafter, the plaintiff filed another motion to modify the discovery order, this time to take the deposition of Bank Vice President Theresa Wnuk by August 18, 2015, regarding

matters raised during Mr. Dorneman's deposition.  (Doc. 41.)  The Bank opposed this extension as well.  (Doc. 42.)  The Court agreed to the Plaintiff's request, and issued an order that authorized the parties to take additional limited reciprocal discovery related to Ms. Wnuk's deposition by September 18, 2015.  (Doc. 44.)

On August 15, 2015, the Plaintiff re-opened Ms. Wnuk's deposition, and inquired of her about two of the occurrences of employee discipline about which Mr. Dorneman attested by way of affidavit as well as through informal communication with the Plaintiff's counsel.  This information first related to an incident that occurred in 2007, and which was investigated in 2010, regarding a Branch Manager in the Bank's Retail Banking line of business who notarized a document outside the presence of signatories.  (Doc. 45, Ex. C, Wnuk Dep. at 165-72.)  The parties have referred to this incident as "Occurrence One", which resulted in the Retail Manager being issued a final written warning for committing this violation of Bank policies and procedures.

Additionally, Ms. Wnuk testified about a second incident that Mr. Dorneman had described in his affidavit involving a teller supervisor in a Bank retail branch who was placed on probation for violating the Bank's check-cashing rules.  This incident has been referred to as "Occurrence Two."  Ms. Wnuk testified that she was not the investigator with responsibility for Occurrence Two.  (Id. at 223, 225.)

Following the deposition of Ms. Wnuk, and despite the limits that the Court had endeavored to place on the narrow additional discovery that was being authorized, the Plaintiff proceeded to notice the deposition of Mike Brundage, as well as a Rule 30(b)(6) deposition of the Bank's corporate representative.  (Doc. 45, at Exs. A and B.)  This prompted the Bank to file the pending motion for a protective order, arguing that the Plaintiff has gone far beyond the limited scope of discovery that the Court authorized by noticing additional depositions, including a Rule 30(b)(6) depositions that covers eleven topics, seeks production of a broad range of documents, and requiring the appearance of multiple deponents.  (Doc. 45.)  The Bank now seeks entry of an order prohibiting the new noticed depositions or, in the alternative, setting strict limitations on any permissible supplemental discovery.

The motion for a protective order has been fully briefed.  For the following reasons, the Court agrees that the Plaintiff's proposed discovery goes beyond that which was contemplated when the Court authorized the Plaintiff to take Ms. Wnuk's deposition, and runs the risk of derailing this litigation by opening up broad categories of discovery that the parties and the Court did not anticipate.  The proposed discovery would be burdensome and of questionable potential relevance, and driven by of what seems to be an increasingly tenuous effort by the Plaintiff to adduce some evidence to demonstrate pretext to undermine the Defendant's decision

4

to terminate the Plaintiff's employment after he admittedly violated by the Code of Ethics by falsifying an internal report.

Because we find that the discovery sought exceeds the bounds of the limited additional discovery that the Court previously permitted, which itself came after multiple enlargements of the discovery period in this action, because we find that the interests of justice commend bringing discovery to a close and moving forward with the litigation, and because we do not find that the Plaintiff has made a sufficient showing necessary to justify the burden or expense associated with the additional discovery, the Bank's motion for a protective order will be granted and the Plaintiff will be directed to respond to the pending motion for summary judgment so the matter may be squarely joined and addressed promptly.

## II.   DISCUSSION

### A.   Discovery and Protective Orders Under the Federal Rules

The Federal Rules of Civil Procedure, in general, permit parties to engage in a broad range of discovery as part of the litigation process.  Rule 26(b)(1) of those Rules provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject

5

> matter involved in the action. Relevant information need
> not be admissible at the trial if the discovery appears
> reasonably calculated to lead to the discovery of admissible
> evidence.

Fed. R. Civ. P. 26(b)(1). "[T]herefore, all relevant material is discoverable unless an

applicable evidentiary privilege is asserted. The presumption that such matter is

discoverable, however, is defeasible. Rule 26(c) grants federal judges the discretion

to issue protective orders that impose restrictions on the extent and manner of

discovery [in some instances]." Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000).

In addition to certain limitations on discovery imposed under Rule 26, the Rules also

allow a party to seek a protective order as follows:

> A party or any person from whom discovery is sought may
> move for a protective order in the court where the action is
> pending . . . . The motion must include a certification that
> the movant has in good faith conferred or attempted to
> confer with other affected parties in an effort to resolve the
> dispute without court action. The court may, for good
> cause, issue an order to protect a party or person from
> annoyance, embarrassment, oppression, or undue burden or
> expense, including one or more of the following:
>
> (A)   forbidding the disclosure or discovery;
> (B)   specifying terms, including time and place,
>        for the disclosure or discovery;
> (C)   prescribing a discovery method other than the
>        one selected by the party seeking discovery;
> (D)   forbidding inquiry into certain matters, or
>        limiting the scope of disclosure or discovery
>        to certain matters;

6

(E)    designating the persons who may be present while the discovery is conducted;

(F)    requiring that a deposition be sealed and opened only on court order;

(G)    requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H)    requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c)(1).  If a motion for a protective order is denied in whole or in part, "the court may, on just terms, order that any party or person provide or permit discovery."  Fed. R. Civ. P. 26(c)(2).  Matters pertaining to discovery are generally committed to the discretion of the trial court.  <u>Wisniewski v. Johns-Manville Corp.</u>, 812 F.2d 81, 90 (3d Cir. 1987).

## B.    A Protective Order is Warranted in this Case

The Bank has moved for a protective order in response to the plaintiff's efforts to seek a broad range of additional discovery after the discovery period has been closed for some time, and after the court opened discovery for the very limited and narrow purpose of permitting the plaintiff to re-open the deposition of a Bank employee who had been involved in the discipline of another Bank employee years before the events at issue in this case.  The plaintiff took this discovery, which was

intended to explore whether the Bank had imposed inconsistent forms of discipline upon similarly situated employees who had been found to have violated Bank rules or its Code of Ethics.  The Plaintiff now seeks to push the limits of discovery even further, by taking the deposition of another Bank executive in New Jersey, as well as Rule 30(b)(6) depositions and corporate discovery that is ostensibly in an effort to demonstrate that the Bank imposed inconsistent discipline on men and women.  Upon review of the discovery taken to date, and the discovery now belatedly sought, we find that a protective order should issue and discovery brought to its conclusion.

The first new category of discovery that the Plaintiff seeks is to take the deposition of Mike Brundage, who is an Executive Vice President, Market Manager, Retail Banking, in Woodland Park, New Jersey.  So far as the Court can determine, there is no allegation that Mr. Brundage has knowledge that is particularly relevant to the Plaintiff's claims, or that he has any knowledge or any involvement in the Bank's decision to terminate the Plaintiff's employment.  Instead, Mr. Brundage's name seems to have come up during Ms. Wnuk's deposition when she testified that he was the Market Manager of the Retail Branch Manager who was issued a final written warning in 2010 for a notary violation that occurred in 2007, and that he had some involvement in the ultimate decision to place that Retail Branch Manager on a final written warning, which the parties have defined as "Occurrence One".

Regardless of this limited involvement, we cannot perceive a sufficient basis to permit the Plaintiff now, after discovery had closed, to depose Mr. Brundage about matters upon which Ms. Wnuk has already testified.

This is particularly so because it does not appear to the Court that the employee involved in Occurrence One was similarly situated to the Plaintiff, as she was employed by the Bank in a different line of business, did not share similar responsibilities to Mr. Barrouk, and was disciplined for a violation that was distinct from the violation that Mr. Barrouk admittedly committed when he falsified a report. (Doc. 40, at p. 6.)   The Plaintiff has done nothing to refute these facts, which substantially distinguish the Plaintiff's circumstances from that of Occurrence One.

We provided a narrow extension of the discovery period in this case in order to permit the Plaintiff to pursue targeted and limited discovery, and the Plaintiff pursued this discovery by deposing Ms. Wnuk who testified about her own investigation into Occurrence Once, and the ultimate decision to discipline the Retail Branch Manager.  We do not find that Plaintiff has justified commencing yet another deposition to further probe this matter, which appears to be substantially distinct from the violations that inspired the Plaintiff's termination.

Moreover, the Plaintiff supports his claimed need to depose Mr. Brundage with a number of questionable assertions, which the Bank has refuted.  Thus, the Bank has

affirmatively represented that Mr. Brundage was not the supervisor of Jolene Astorino, the Retail Branch Manager who was disciplined with respect to Occurrence One; instead, the Bank has represented that Mr. Brundage was a Market Manager who was "far removed from the day-to-day branch activities." (Doc. 48, at p. 7.) Ms. Wnuk did testify that Mr. Brundage had some participation in the ultimate decision to issue a final written warning to Ms. Astorino, but her testimony does not reasonably suggest that Mr. Brundage was involved in the investigation or that he likely has relevant information beyond that already provided by Ms. Wnuk, which the Plaintiff has had a full and fair opportunity to explore. The Plaintiff's suggestion that the discovery might be of benefit appears, particularly at this late date, to be little more than speculation.

The Plaintiff seems to suggest that Mr. Brundage may have violated the Bank's Code of Ethics, but he provides no compelling basis for this assertion, and we do not find that his assertions at this late date provide support for opening yet an entirely new round of discovery into an area that has been sufficiently covered. The Bank has represented that Mr. Brundage is an executive with responsibility for approximately 200 bank branches, and thousands of employees, and is well removed from the day-to-day activities at issue. Particularly since Ms. Wnuk has already been deposed about Occurrence One, and provided testimony about the Bank's investigation and

the reasons why Ms. Astorino was issued a final warning, we do not find that there is sufficient justification to permit the Plaintiff to conduct an entirely new and belated deposition of a Bank executive who appears to have little involvement in the matter at issue.  We agree with the Bank that Mr. Brundage's noticed deposition should not go forward.

Turning to the Plaintiff's Rule 30(b)(6) notice, we also find that this discovery is improper as it is considerably broader than that which the Court contemplated when it provided the parties with a limited extension of discovery in this case, seeks discovery that is overly broad and unduly burdensome, and which does not appear to the Court to be reasonably calculated to lead to the discovery of admissible, relevant evidence.

The Rule 30(b)(6) notice seeks testimony on three broad topics relating to the Bank's Code of Ethics, and production of all versions of the Code of Ethics from 2007 until 2015, as well as "all documents which pertain to" the Code of Ethics.  The Plaintiff would seek to take deposition testimony regarding "all matters pertaining to" the Code of Ethics that were in place in 2007, "any and all changes made to the" Code of Ethics from 2007 to 2012, and "any and all changes made to the interpretation of" the Code of Ethics from 2007 to 2012.  The Bank has objected to this discovery on the grounds that the requests are not stated with reasonable particularity, as is

required by Rule 30(b)(6); that they are vague and ambiguous; and that they are so broad and unduly burdensome that they are not reasonably calculated to lead to the discovery of relevant evidence.

Moreover, the Bank notes that during her deposition, Ms. Wnuk did not testify that the Bank's Code of Ethics had changed in ways that were relevant to the Plaintiff, and she did not testify that the Bank's Code of Ethics had changed with respect to the Retail Branch Manger, Ms. Astorino, who was involved in Occurrence One. Indeed, Ms. Wnuk had testified that it was not the practice of the Bank to terminate for notary violations in 2007, but that sometime between 2007 and 2010, that changed, but that she was not aware of any other changes that may have been made with respect to the Code of Ethics.

Which gives rise to another of the Bank's arguments: the Code of Ethics inquiry that the Plaintiff apparently now wishes to undertake is not relevant to his claims in this case. Ms. Astorino, a Retail Branch Manager, was disciplined for a notary violation, not for falsifying records. The Bank thus maintains that the Plaintiff's efforts to present her as a comparator, or to try to uncover some information to create the appearance that these two employees were similarly situated, committed similar violations, yet received inconsistent discipline as a result is misplaced, where the Plaintiff worked in a different division and admittedly

committed a different, deceitful offense by falsifying an internal Call Report. The Plaintiff has not contested or really disputed in any way that the Bank ever treated a similar falsification of a Call Report as anything other than a terminable offense. For these reasons, and because the proposed discovery goes far afield of what Ms. Wnuk testified to during her deposition, the Bank opposes the inquiry into the Code of Ethics. We agree that this discovery is overly broad, burdensome, and appears almost entirely irrelevant, as well as beyond the scope of the discovery the Court anticipated the parties would engage in during a limited period of additional discovery.

Additionally, despite having deposed Ms. Wnuk about Occurrence One and the Bank's discipline of Ms. Astorino that followed, the Plaintiff now wishes to undertake further inquiry into this matter through examination of a Rule 30(b)(6) corporate designee, in order to elicit testimony about "the investigation of all matters pertaining to" Occurrence One; the discipline that was imposed; the identities of the signatories to the underlying document that was the subject of the notary violation; the "nature of the document"; "any claims made against PNC arising out of or related to" and "any and all losses incurred by PNC arising out of or related to" Occurrence One; and production of documents and testimony regarding Occurrence One, including but not limited to corporate documents generated that related to the occurrence, and Ms. Astorino's personnel records.

We agree with the Bank that these requests are overly broad, are seemingly without limitation, bear little relevance to the actual claims in this case, and would be especially burdensome to produce.  Moreover, these requests go far beyond the discovery that the Court authorized.  As noted, the Court permitted the Plaintiff to take discovery from Ms. Wnuk, who was the Senior Employee Relations Manager in 2010, who was responsible for investigating Ms. Astorino's 2007 notary violation, and for deciding to impose a final written warning as appropriate discipline for that violation.  The Plaintiff has had a full and fair opportunity to take this discovery through Ms. Wnuk's deposition, and has explored many of the areas that he now wishes to further delve into through a Rule 30(b)(6) deposition.  We do not find that this additional discovery is necessary or appropriate, and find that it would needlessly prolong this litigation.  We do not find that exploring additional specifics of the underlying violation at issue in Occurrence One is necessary in light of the discovery that has already been taken, and the additional corporate discovery relating thereto will not be authorized.

As with the discovery sought pertaining to Occurrence One, Plaintiff seeks equally broad, and seemingly unlimited, discovery regarding Occurrence Two, which involved a female Bank employee who was disciplined for a check cashing violation and was placed on probation.  Here, too, the Plaintiff seeks belated discovery of all

14

disciplinary action taken against her, her personnel file, and related documents.  The

Bank again objects on the grounds that the proposed topics of the 30(b)(6) notice are

overly broad and ambiguous, burdensome, and not relevant to the issues in this case,

as well as beyond the scope of the discovery previously authorized.  Here, too, Ms.

Wnuk testified to this matter, which involved an employee who works in the Bank's

retail branch, rather than Plaintiff's Corporate Banking business, and the Bank thus

maintains that the employee involved in Occurrence Two is also not similarly situated

to serve as a comparator for purposes of Plaintiff's discrimination claims.  Ms. Wnuk

was not the investigator or employee charged with disciplining the employee who

committed this violation, but her testimony sufficiently showed that the Plaintiff

worked in a different line of business and admittedly committed a distinct violation

of the Code of Ethics.  Whatever questionable relevance this line of inquiry may have

to the Plaintiff's claims, we do not find that further investigation into this particular

incident is warranted at this late stage of the litigation, particularly because we are not

persuaded that the Plaintiff and the employee involved in Occurrence Two are

similarly situated and did not commit related offenses.

    Lastly,  the  Plaintiff's  Rule  30(b)(6)  deposition  notice  seeks  information

regarding the extent to which Kirsten LeGates participated in the investigation and

discipline of the Plaintiff's 2012 false report.  This discovery is apparently inspired

by Ms. Wnuk's testimony that she did not know the extent of Ms. LeGates's involvement in her capacity as Employee Relations Investigation Manager. Notwithstanding that this newly propounded discovery exceeds the scope authorized or contemplated by the Court, the Bank has agreed to produce a declaration from Ms. LeGates which will attest to the fact that Ms. LeGates had no involvement with either the investigation or the discipline imposed on Mr. Barrouk.  Accordingly, the Bank represents, and the Court agrees, that there is no further purpose to be served by allowing additional inquiry into this area.

## III.   <u>CONCLUSION</u>

Although the Court recognizes that the parties were granted additional limited reciprocal discovery to inquire into a narrow set of issues, and although the Court appreciates why the Plaintiff may wish to push the scope of discovery ever further in light of some information gleaned during Ms. Wnuk's deposition, we agree with the Bank that the proposed new discovery is overly broad, is unduly burdensome, goes beyond that which was contemplated by the Court when it authorized limited additional discovery, and ultimately does not appear reasonably calculated to lead to the discovery of further relevant admissible evidence.  The Plaintiff had an opportunity to depose Ms. Wnuk, did so, and by doing so learned additional information that may have some limited relevance to his claims.  We do not find,

however, that allowing further inquiry into this area is justified at this late date, based upon the discovery that was actually taken, and based upon the Plaintiff's arguments in favor of further forms of discovery.

The discovery the Plaintiff would take would impose considerable burdens on the Defendant, is quite vast in its potential scope, but concerns matters that appear to this Court to be distinct and tangential from the issues that are actually being litigated in this action.  For these reasons, and because the Court finds it is in the interests of all parties to place this action back on a track towards a fair and efficient resolution, the Bank's motion for a protective order will be granted, discovery will be closed, and the Plaintiff will be directed to respond to the pending motion for summary judgment within 30 days.

## IV.    <u>**ORDER**</u>

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED THAT the Defendant's motion for a protective order (Doc. 45) is GRANTED.  Fact discovery in this action is now closed.

IT IS FURTHER ORDERED THAT the Plaintiff shall file a brief and counterstatement of material facts in response to the Defendant's motion for summary judgment on or before Friday, January 22, 2016.  The Bank shall be permitted to file a reply brief in further support of its motion on or before Friday, February 5, 2016.

17

No further briefing on the motion for summary judgment shall be authorized without

leave of Court.

So ordered this 29th day of December, 2015.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge